UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                    :

UNITED STATES OF AMERICA,        :
                                      :

        v.                    :         **MEMORANDUM & ORDER**
                                      :         19-CR-004-2 (WFK)

MOLISSA GANGAPERSAD,        :
                                      :

               Defendant.     :
------------------------------------------------------x

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 26, 2022, a jury found Molissa Gangapersad ("Defendant") guilty of making False Statements to Special Agents of the Federal Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 12 months of incarceration followed by 3 years of supervised release. The Court also orders Defendant to pay the $100.00 mandatory special assessment.

## BACKGROUND

On January 3, 2019, a grand jury returned an Indictment charging Defendant with making

False Statements to Special Agents of the FBI in violation of 18 U.S.C. § 1001(a)(2).

Indictment, ECF No. 11. Specifically, the Indictment alleges Defendant falsely stated and

represented to FBI Special Agents she had not witnessed Ronell Watson's involvement in the

assault of an FBI Special Agent. *Id.* Mr. Watson was also charged with separate crimes in the

same Indictment, and was convicted by a jury of those counts on July 17, 2019. *Id.*; ECF No.

104. On May 26, 2022, following a three-day trial, Defendant was convicted by a jury of

making False Statements to Special Agents of the FBI in violation of 18 U.S.C. § 1001(a)(2).

*See* Jury Verdict, ECF No. 223.

On July 8, 2022, Defendant filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Government opposed on August 10, 2022.  The Court denied Defendant's motion for acquittal on October 31, 2022.

## DISCUSSION

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## I.       Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

## II.      Analysis

**A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Family and Personal Background</u>

Defendant was born Molissa Leone Joseph on September 10, 1988 in Brooklyn, New York, to Harold Joseph and Monique Barthelemy. Presentence Investigation Report ("PSR") ¶ 34, ECF No. 230. Defendant's father resides in Queens, New York, and Defendant's mother resides with her at the address of record. *Id.* Defendant's mother suffers from liver issues and a heart condition. *Id.* Defendant shares good relationships with her parents, who are aware of her conviction and remain supportive of her. *Id.* Defendant has two maternal half-siblings and two paternal half-siblings, with whom she shares good relationships and who are aware of her conviction and remain supportive. *Id.* ¶ 35. Defendant also has two additional paternal half-siblings but has no relationship with them. *Id.*

Defendant was raised in a lower-income neighborhood in Brooklyn, New York, primarily by her mother and older maternal half-sister. *Id.* ¶ 36. Defendant's mother worked long hours, during which time Defendant's older sister watched over her. *Id.* ¶ 37. Defendant reported she spent time with her father on the weekends throughout her childhood, and he also provided her with financial support. *Id.* ¶ 36. Defendant noted there were periods in her childhood where her family had no electricity or food, and that her family was once evicted and needed to move in with a friend of her mother's until her mother was able to save enough to provide them with a new home. *Id.*

3

On December 20, 2008, Defendant married Keem Chang Gangapersad, and they divorced in 2010. *Id.* ¶ 38. In 2009, Defendant met Ronell Watson with whom she shares a twelve-year old daughter. *Id.* ¶ 39. Defendant's daughter was born premature, and suffers from bronchitis, asthma, and poor vision. *Id.* Because Defendant was unsure of the outcome of the instant case, her daughter has been residing with her paternal grandparents in Brooklyn, New York since Defendant's trial, and will continue to reside with them until Defendant's sentencing. *Id.* However, Defendant spends time with her daughter daily and ensures her basic needs are met. *Id.* Defendant's daughter is aware of her involvement in the instant offense as well as Mr. Watson's offense. *Id.* ¶ 40. Defendant's daughter was strongly affected by Mr. Watson's conviction, and her grades suffered as she refused to complete her assignments and exams. *Id.* Defendant's daughter has been improving since she began speaking regularly with her father on the telephone. *Id.*

Defendant has primarily lived in Brooklyn, New York. *Id.* ¶ 41. She previously lived at 1626 Canarsie Road in Brooklyn, New York between 2009 and August 2020. *Id.* Since June 2022, Defendant has resided at the address of record, where she lives with her mother and brother. *Id.*

2. Educational and Employment History

Defendant attended Southshore High School in Brooklyn, New York from 2005 to 2006, where she completed the tenth grade. *Id.* ¶ 48. Defendant's grades were poor, but she reported no disciplinary history. *Id.*

Since May 31, 2022, Defendant has been a Caregiver Application Specialist at Astra Home Care Inc. in Brooklyn, New York. Def. Sentencing Mem. at 3, ECF No. 234; PSR ¶ 50. From August 2020 to October or November 2021, Defendant was employed as a coordinator

with Swift Homecare in Brooklyn, New York.  PSR ¶ 51; Def. Sentencing Mem. at 3.  Between

February 2020 and August 2020, Defendant was employed as a coordinator for Four Seasons

Home Care in Brooklyn, New York.  PSR ¶ 52.  From November 2019 to February 2020,

Defendant was a home healthcare aide with Rockaway Home Care in Long Island, New York.

*Id.* ¶ 53.  From June to November 2019, Defendant was employed by Brooklyn Boulevard

Assisted Living, in Brooklyn, New York.  *Id.* ¶ 54.  From August 2017 to September 2018,

Defendant was employed by Blue Star Cares in Brooklyn, New York.  *Id.* ¶ 55.  From March to

August 2017, Defendant was employed by Most Excellent Home Care in Queens, New York as a

home healthcare aide.  *Id.* ¶ 56.  Prior to 2017, Defendant was, at various times, employed as a

home healthcare aid, an associate at a farmer's market in Brooklyn, a cashier at a supermarket, a

sales associate at a clothing store, and an employee of an insurance company, the data entry

department of a laboratory, and fast food restaurants.  *Id.* ¶¶ 57–65.  Defendant also received

unemployment benefits between October 21, 2021 and May 31, 2022, except during her trial in

this case.  *Id.* ¶ 66; Def. Sentencing Mem. at 3.

### 3.  Prior Convictions

Defendant has no prior convictions.

### 4.  Medical and Mental Health

Defendant suffers from sciatic neuritis, for which she is prescribed Ibuprofen.  *Id.* ¶ 43.

Defendant also received an epidural in her neck and lower back which causes pain.  *Id.*  In March

2021, Defendant was involved in an automobile accident which required her to undergo surgery

in both shoulders.  *Id.* ¶ 44.  In September 2021, Defendant was involved in a second automobile

accident and underwent two additional shoulder surgeries in January 2022.  *Id.*  Beginning in

2018, following her arrest for the instant offense, Defendant reported experiencing depression. *Id.* ¶ 45.

     5.  <u>Substance Abuse</u>

     Defendant disclosed she first tried marijuana while in high school, but she did not actively use marijuana until she met Mr. Watson in 2009. *Id.* ¶ 46. Defendant last smoked marijuana in 2018. *Id.* As a condition of Defendant's pretrial supervision, she is subject to urine testing. *Id.* ¶ 47. Defendant has continuously tested negative for illicit controlled substances.

     6.  <u>Nature and Circumstances of the Offense</u>

     On December 8, 2018, Federal Bureau of Investigation ("FBI") Agent Christopher Harper parked his vehicle in front of 1626 Canarsie Road in Brooklyn while conducting surveillance on an unrelated target. PSR ¶ 5. Defendant lived with Ronell Watson at that address, and from the entryway of the residence saw Agent Harper parked in his car, wearing a red sweatshirt. *Id.* Red is the color of the Bloods, a rival gang of Mr. Watson's gang. *Id.* Defendant called Mr. Watson, who arrived in his car three minutes later, parked in the middle of the road, and approached Agent Harper's car on foot with his hand in his sweatshirt. *Id.* Agent Harper sensed he was in danger, and attempted to drive away. *Id.* Mr. Watson shot a firearm at Agent Harper multiple times as he drove away. *Id.* Agent Harper suffered gunshot wounds and a collapsed lung. *Id.* Mr. Watson then returned to his vehicle and drove away. *Id.*

     Throughout the time that Mr. Watson arrived on the street and shot Agent Harper, Defendant stood in the doorway of her home watching the street where the attack occurred. *Id.* ¶ 8. Surveillance video shows Defendant walking out onto her porch as Mr. Watson drove away, and that she was on a phone call throughout the attack. *Id.* Defendant's cell records show her phone call was with Mr. Watson. *Id.* ¶ 9. Three hours later, Defendant used her cell phone to

copy and email to herself the video surveillance depicting Watson shooting Agent Harper and fleeing thereafter. *Id.* ¶ 10.

Later that day, FBI agents went to Defendant's home, and she agreed to a voluntary interview. *Id.* ¶ 11. During this interview, FBI agents informed Defendant that lying to them was a crime. *Id.* Defendant falsely told the agents she had not witnessed the shooting of Agent Harper and claimed not to know anything about it. *Id.* Later, after agents confronted her with the surveillance video, Defendant admitted she had, in fact, witnessed the shooting. *Id.* Defendant was arrested at her residence on December 10, 2018. *Id.* ¶ 12.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved lying to FBI agents and impairing the investigation into the shooting of Agent Harper in the critical hours following the attack. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for her offense.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted by a jury of making false statements to special agents of the FBI in violation of 18 U.S.C. § 1001(a)(2).  For this offense, Defendant faces a maximum term of imprisonment of five years.  18 U.S.C. § 1001(a)(2).  Defendant also faces a maximum supervised release term of three years.  18 U.S.C. § 3583(b)(2).  Because the instant offense is a Class D Felony, Defendant is eligible for not less than one nor more than five years of probation.  18 U.S.C. § 3561(c)(1).  If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist that would make such a condition plainly unreasonable.  18 U.S.C. § 3563(a)(2).

Defendant also faces a mandatory special assessment of $100.00, as well as a maximum fine of $250,000.00.  18 U.S.C. §§ 3013 and 3571(b).  According to Defendant's financial profile, she appears unable to pay a fine.  First Addendum to the PSR ¶ 69.

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]"  *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 1001(a)(2) offenses is U.S.S.G. § 2B1.1, which provides a base offense level of six.  No offense level adjustments are applicable; therefore, the total offense level is six.  Defendant has no criminal convictions, which results in a criminal history score of zero.  According to the sentencing table at U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.  Based upon an offense level of six and a criminal history category of I, the Sentencing Guidelines suggest a term of

8

incarceration of zero to six months.  A sentence of probation is authorized pursuant to U.S.S.G. § 5B1.1(a)(1) because the applicable guideline custody range is in Zone A of the Sentencing Table.

Probation recommends a sentence of three years of probation.  Probation also requests the Court excuse Defendant from the mandatory drug testing provision of 18 U.S.C. § 3563(a)(5) because there is no indication Defendant has been abusing drugs.  The Government recommends an above-Guidelines sentence of 12 months of incarceration.  The Defense recommends a non-incarceratory sentence of probation.

**E.  Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5).  This factor does not apply here.

**F.  The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  On July 17, 2019, co-defendant Ronell Watson was convicted by a jury of attempted murder of a federal officer, assault of a federal officer, and possessing and discharging a firearm during a crime of violence.  On June 15, 2021, Mr. Watson was sentenced by this Court to 382 months of incarceration followed by three years of supervised release with special conditions.  For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence of this Defendant avoids unwarranted sentence disparities.

**G.  The Need to Provide Restitution**

The seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  Restitution is not applicable in this case.

## CONCLUSION

Finally, the Court has this to say: in Act One, scene seven, Lady Macbeth persuades her husband Lord Macbeth to act on his impulse to kill King Duncan, thus enabling Macbeth to become king.  However, after considering the gravity of murdering a king, Macbeth changes his mind and decides not to do it.  When he tells Lady Macbeth about his change of heart, she becomes alarmed and reminds him he promised her he would kill the king. When Macbeth asks her what will happen to them if they fail in the attempted murder, she utters this fateful phrase: "but screw your courage to the sticking place and we'll not fail."  Macbeth kills Duncan.  And he and Lady Macbeth, as planned, lie to the authorities about the murder—blaming the murdered king's bodyguards—whom they had cynically drugged prior to the murder.  To make matters worse, they smeared the murdered king's blood on the drugged guards and proceeded to murder them as well.

Fortunately, the agents of the FBI were neither drugged, murdered, nor stupid.  Despite Defendant's repeated lies, they and the NYPD figured out Mr. Watson attempted to murder Agent Harper, arrested Mr. Watson, secured his trial before a jury of his peers and saw this Court impose the sentence on Mr. Watson he so richly deserved.  A separate jury tried and convicted Ms. Gangapersad for her lies to agents of the FBI.  When she willingly initiated the chain of events leading to the attempted murder of special Agent Harper, she effectively assumed the role of Lady Macbeth: and when you assume the role of Lady Macbeth in Act One, you suffer the consequences of Lady Macbeth in Act Five.

The law will not give Defendant a free pass: she made the fateful call that led to the attack, she witnessed the attack, she covered up the attack, and she lied about the attack. She witnessed her life partner shoot an innocent man in the back because that man had the temerity to wear a jolly red suit while admiring her outdoor holiday decorations two weeks before Christmas. She then repeatedly lied to the FBI about what she saw. She should not be shocked to find nothing beyond a lump of coal in her Christmas stocking. Santa Claus distinguishes actions between naughty and nice. This Judge is not Santa Claus. This Court finds Defendant's actions on that fateful day went well beyond the mythical realm of naughty or nice: in this real world, they were cowardly, craven, and criminal.

The Court finds that a sentence of twelve months of incarceration followed by three years of supervised release is appropriate. The Court suspends the drug testing requirement in 18 U.S.C. § 3583(d) because Defendant presents a low risk of future substance abuse. The Court additionally imposes the $100.00 mandatory special assessment but does not impose a fine because the Defendant does not have the ability to pay.

This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. As stated on the record, the Court also expressly adopts the factual findings of the Presentence Investigation Report and the first addendum thereto, except for the modification made to paragraph six, barring any errors contained therein and to the extent they are not inconsistent with the Court's sentence.

SO ORDERED.

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 12, 2022
Brooklyn, New York

11